John H. TEALE, Appellant,

v.

AMERICAN MANUFACTURERS MUTU-
AL INSURANCE COMPANY,
Respondent.

No. WD 42304.

Missouri Court of Appeals,
Western District.

July 31, 1990.

As Modified Oct. 2, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Thomas J. Downey, Jefferson City, for
appellant.

Laurence R. Tucker, Morris & Larson,
P.C., Kansas City, for respondent.

Before NUGENT, C.J., Presiding,
ULRICH, J., and WASSERSTROM,
Senior Judge.

ULRICH, Judge.

John H. Teale, chiropractor, appeals the
judgment entered in favor of the American
Manufacturers Mutual Insurance Company
(Insurance Company) following jury trial
and verdict. Dr. Teale had sued the insur-
ance company, a worker's compensation in-
surance carrier, alleging tortious interfer-
ence with the contractual relationship be-
tween a patient and himself.[1] Dr. Teale
contends that the trial court erred by de-
clining to sustain his motion for a directed
verdict on the issue of liability at the close
of all the evidence and by refusing to in-
struct the jury as he requested in a pro-
posed instruction. The judgment is af-
firmed.

---

1. In a previous decision this court reversed the
dismissal of Dr. Teale's petition for a failure to
state a claim and remanded the case for trial.
*Teale v. American Manufacturers Mutual Insur-* *ance Company,* 687 S.W.2d 218 (Mo.App.1984).
The substance of Dr. Teale's claim was not con-
sidered.

Freda Whelchel's back was injured on October 7, 1982, while she was an employee of Bob's IGA Supermarket in Excelsior Springs.[2] Unable to work, she informed her employer of the injury and was instructed to see a physician. She was seen by Dr. John Teale in Excelsior Springs. Dr. Teale determined Ms. Whelchel suffered acute lumbar strain with a lumbosacral subluxation (an out-of-place vertebrae in her lower back). He initiated a course of treatment consisting of chiropractic adjustments, muscular stimulation, nutritional supplements, and a lumbosacral support belt. He gave Ms. Whelchel a document stating that she was unable to work until October 18, 1982, and directed that she give the document to her employer. Dr. Teale treated Ms. Whelchel on four occasions before she returned to work on October 18, 1982.

When Ms. Whelchel returned to work, Dr. Teale restricted her from lifting more than thirty pounds and required that she wear a lumbosacral support belt. Ms. Whelchel continued to experience pain while working, and she returned to Dr. Teale's office the afternoon of October 18. Dr. Teale gave her another document for her employer stating that she should remain off work until October 25, 1982. Dr. Teale later extended the time Ms. Whelchel should remain off work until November 1, 1982.

Ms. Whelchel reported her injury to her employer, and on October 11, 1982, a workmen's compensation report of injury form was completed by Bob's IGA. The completed form informed that Dr. Teale was the attending physician. The completed form was mailed to the insurance company where it was received by Karen Fairchild, the insurance company's adjuster. Ms. Fairchild telephoned Ms. Whelchel on October 18 and discussed the injury, its occurrence, and treatment for the injury. Ms. Whelchel informed Ms. Fairchild that she had an appointment to see Dr. Teale the afternoon of October 18, and Ms. Fairchild asked Ms. Whelchel to telephone her the

next morning. Ms. Fairchild, as standard procedure, recorded on a standard form used by the company, "I'll set her up with a Dr. Jackson??" Following her examination by Dr. Teale on October 18, Ms. Whelchel informed Ms. Fairchild that Dr. Teale had restricted her from working until October 25, 1982. Ms. Fairchild recorded another note, that Ms. Whelchel "feels confident with Dr. Teale, so I will let her stay with him until 10–25."

Shelley Lynch was an employee of Bob's IGA. She was in charge of all worker's compensation claims for her employer. Part of her responsibilities included delegated authorization to select medical care providers for injured Bob's IGA employees. Ms. Lynch did not specifically authorize Dr. Teale to treat Ms. Whelchel, but she did not initially object to Ms. Whelchel being treated by him. She determined that Dr. Roger Jackson, an orthopedic surgeon, should treat Ms. Whelchel approximately two weeks following Ms. Whelchel's injury. Ms. Lynch told Ms. Fairchild of her decision to select an orthopedic surgeon to treat Ms. Whelchel, saying that it was her practice to select orthopedic surgeons to treat employees who sustained back injuries. Ms. Lynch instructed Ms. Fairchild to make an appointment for Ms. Whelchel to be examined by Dr. Jackson.

Ms. Fairchild wrote at least two letters to Ms. Whelchel. Ms. Lynch received copies of the letters. The first letter, dated October 26, 1982, stated that "under the worker's compensation act, the employer/insurance company has the right to select the treating doctor. After October 27, 1982, Dr. Teale is no longer considered the authorized physician and any bills incurred after that date will be your responsibility." The second letter, dated November 3, 1982, was written because Ms. Whelchel expressed some dissatisfaction with the treatment she was receiving from Dr. Jackson. This letter again stated that "The employer/insurance company has the right to select the treating physician." Because Ms. Whelchel was unhappy with Dr. Jackson's

---

**2.** The evidence is viewed in the light most favorable to the respondent. Inferences unfavorable to the respondent are disregarded. *Parker v. Pine,* 617 S.W.2d 536, 541 (Mo.App.1981).

recommendations for her treatment, five other physicians or groups of physicians were listed in the letter from which Ms. Whelchel could select a treating physician. Ms. Lynch testified that Ms. Fairchild's communications with Ms. Whelchel and that Ms. Fairchild's actions to obtain treatment were in compliance with her wishes.

Dr. Teale's first point asserts that the trial court erred by failing to sustain his motion to direct a verdict in his favor at the close of all the evidence. He contends the evidence establishes as a matter of law that the insurance company and not Bob's IGA selected the treating physician. Section 287.140(9), RSMo Supp.1980, provided that the employer may select the treating physician for an employee treated under the Worker's Compensation Law. Therefore, if the employer selected the treating physician, Dr. Teale cannot prevail.

■ Dr. Teale, as the plaintiff, had the burden of proof. Directed verdicts are not favored for plaintiffs. A plaintiff is entitled to directed verdict only when he has established his claim as a matter of law and when there are no factual questions remaining for the jury. *Bank of Brookfield–Purdin, N.A. v. Burns,* 724 S.W.2d 262, 264 (Mo.App.1986). A directed verdict is a drastic action and should be granted only where reasonable and honest people could not differ on a correct disposition of the case. *Jarrell v. Fort Worth Steel & Manufacturing Co.,* 666 S.W.2d 828, 833 (Mo.App.1984).

■ Shelly Lynch, an employee of Bob's IGA, acting in behalf of her employer, selected Dr. Jackson as the treating physician, and she communicated directions regarding selection of the treating physician to the insurance company. Ms. Lynch's testimony conflicted with any evidence which may have suggested that the insurance company selected Dr. Jackson as the treating physician. Dr. Teale was not entitled to a directed verdict, unless reasonable minds, viewing the evidence in a light most favorable to the insurance company, could only have found in Dr. Teale's favor. *Id.*

Assuming, arguendo, that all of the other elements that must be proved to successfully maintain a case of tortious interference were proved, sufficient evidence was introduced by which the jury could find that the decision to select Dr. Jackson as treating physician in lieu of Dr. Teale was made by Ms. Whelchel's employer pursuant to statute and that the insurance company was justified in its conduct because it was responding to the employer's decision. *Teale v. American Manufacturers Mutual Insurance Company,* 687 S.W.2d 218, 219 (Mo.App.1984); *Francisco v. Kansas City Star Company,* 629 S.W.2d 524, 529 (Mo. App.1981) (both cases state the five elements in a tortious interference case). Resolution of the factual issue was for the jury. Point one is denied.

As point two, Dr. Teale contends that the trial court erred by refusing to instruct the jury as he proposed. Dr. Teale requested that the court give the following instruction:

Under the Workers' Compensation Law in existence at the time of the event mentioned in the evidence, only the employer had a right to select the treating physician for an employee injured on the job.

If the employer allowed the employee to select a physician, then that physician became the treating physician on the case.

By amending § 287.140(9) in 1980, the legislature intended to deny insurers any voice in directing workers to particular doctors or classes of doctors for treatment of job related injuries.[3]

■ The first paragraph of the proposed instruction was given by the court in Instruction No. 6. Dr. Teale has failed to demonstrate how he was prejudiced by the court's refusal to instruct the jury as requested in paragraphs two and three of the requested instruction. The second paragraph of the proposed instruction is argument, and the third paragraph is an ab-

---

**3.** The proposed instruction is not contained in       Missouri Approved Instruction (MAI).

stract statement of the law. Rule 70.02(e). Point two is denied.

The judgment is affirmed.

All concur.